IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 02, 2014

**IN RE DESTIN R.**

**Appeal from the Juvenile Court for Wilson County**
**No. 2009DC148     John T. Gwin, Judge**

_____

**No. M2013-02156-COA-R3-JV - Filed April 8, 2015**

_____

In this grandparent visitation case the mother of the child appeals the grant of the petition to establish grandparent visitation privileges. We vacate the judgment and remand the case for entry of an order in compliance with Tenn. Rule Civ. P. 52.01.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and W. NEAL MCBRAYER, J. joined.

Patty Stolinsky, Lebanon, Tennessee, for the appellant, Amy Norman.

Kimberly K. Schreiber and J. Ray Akers, Mt. Juliet, Tennessee, for the appellee, Roy Redferrin and Shuwanna Redferrin.

**OPINION**

Destin R. was born to Amy Redferrin ("Mother") in April 2007. At the time of his birth Mother was living with her father and step-mother ("Grandfather" and "Grandmother" or collectively "Grandparents"); she and Destin continued to live with them until Destin was two years old. During that time Grandfather took care of Destin while Mother was at work or attending school.

When Destin was two, he and Mother moved into their current home with Daniel Norman, who was to become her husband; Destin was enrolled in daycare. In time Destin began exhibiting aggressive behavior, to the extent that he was dis-enrolled from the daycare facility. At the suggestion of his pediatrician, Mother took Destin to a doctor who prescribed

medication to help with his aggression. Destin also began seeing Dr. Eboni Webb, a clinical psychologist, who took him off the medication and developed a behavioral modification plan to which all family members and caregivers were to adhere while Destin was in their care. The plan included specific guidelines and a notebook in which the caregiver was to record Destin's activities, food, any behavior problem and how that problem was dealt with at that time. The main focus of the plan was consistency and structure for Destin.

As things progressed, Mother became concerned that the Grandparents were not following the plan when Destin was with them and began restricting his visits with them; the implementation of her restrictions, over time, led to deterioration of the relationship between Mother and Grandparents, particularly Grandmother. On February 15, 2012, Mother informed Grandfather that if he wanted to see Destin "[Grandfather] could come to my house or I would meet him somewhere, but that [Grandmother] wasn't welcome due to a text message of an article that I received."

On April 13, 2012, Grandparents filed a Petition to Establish Grandparent Visitation; a Guardian ad Litem was appointed on January 23, 2013 and submitted a report on February 14. The case came to trial on July 19, 2013. In an order entered August 20, 2013, the court found that Mother "effectively terminated Petitioners' visitation" and ordered specific visitation privileges for the Grandparents with Destin.

Mother appeals, articulating the following issues:

1. Did the trial court err in applying T.C.A. 36-6-306(a)(5) in finding that as Mother lived in Plaintiffs home while the child was in her custody that the statute would apply thus creating a rebuttable presumption that denial of visitation may result in irreparable harm to the child;
2. Did the trial court err in applying T.C.A. 36-6-306(b)(1)(A) and making a finding that maternal grandfather had served as primary caregiver for the child while the child was in Mother's custody and living in his home with Mother;
3. Whether the trial court erred in finding that there was an effective denial of visitation or severance of a relationship between the minor child and Plaintiffs occurred so as to implicate the provisions of Tenn. Code Annotated 36-6-306;
4. Did the trial court err in finding risk of substantial harm to the minor child if the request for visitation was denied.
5. Did the trial court err in finding that ordering Grandparent Visitation is in the best interest of the minor child.

2

## I. STANDARD OF REVIEW

Grandparent visitation cases are reviewed by applying the abuse of discretion standard, "with the child's welfare given paramount consideration. Review of questions of law, including issues of statutory construction, is de novo with no presumption of correctness attached to the judgment of the trial court." *Smallwood v. Mann*, 205 S.W.3d 358, 361 (Tenn. 2006) (internal citations omitted). We review the trial court's findings of fact *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *4215 Harding Road Homeowners Ass'n. v. Harris*, 354 S.W.3d 296, 305 (Tenn. Ct. App. 2011); *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

## II. ANALYSIS

Tenn. Code Ann. § 36-6-306 provides the framework by which grandparents may petition a court for visitation with their grandchildren and upon which Grandparents petition was based; the portion of the statute pertinent to this case states:

> Any of the following circumstances, when presented in a petition for grandparent visitation to the circuit, chancery, general sessions courts with domestic relations jurisdiction or juvenile court in matters involving children born out of wedlock of the county in which the petitioned child currently resides, necessitates a hearing if such grandparent visitation is opposed by the custodial parent or parents:
>
> * * *
>
> (5) The child resided in the home of the grandparent for a period of twelve (12) months or more and was subsequently removed from the home by the parent or parents (this grandparent-grandchild relationship establishes a rebuttable presumption that denial of visitation may result in irreparable harm to the child);

Tenn. Code Ann. § 36-6-306(a)(5). As is clear from the wording of the statute, visitation by grandparents must be opposed before the court is empowered to act; accordingly, we first address Mother's contention that the court erred in finding that she denied visitation to Grandparents. We consider this issue in light of the unique procedural posture in which it is presented by the record.

At the beginning of the hearing, the following dialogue took place between Grandparents' counsel and the court:

[COUNSEL FOR GRANDPARENTS]: Your Honor, the only statement I'd make on the statement that you've 'read the file' and you know what the issues are, based on the pleadings filed by the parties [and] Your Honor's order that was entered on August 15, 2012 [sic], the - - the rebuttable presumption has been met under 36-6-306. So the burden - - my argument is the burden shifts --
* * *
THE COURT: And the burden does shift.

The court then called upon Mother to present her first witness. The court did not specify what burden it was imposing on Mother or why it was necessary for her to proceed first. A finding that Mother opposed visitation was a prerequisite to proceeding further and Grandparents had the burden of showing same; there was no proof before the court at the time the court ruled that "the burden does shift".[1]

Mother did not raise a concern as to the ruling and proceeded to call Grandfather to testify. In addition to Grandfather and herself, Mother's proof consisted of the testimony of Lynn Etherly, the owner of the child care center Destin attended from October 2009 to September 2010; Daniel Norman, Mother's husband; Jill Norman, Daniel's mother; and the deposition of Dr. Webb. Upon the close of Mother's proof, the court made no ruling and Grandparents began to put on their proof, consisting of the testimony of Marie Ruskin, a friend of Grandparents; Grandparents; Jeffrey Redferrin, Mother's half-brother[2]; Melinda Waldrop, a friend of Grandmother; and Ensley Hagan, the guardian ad litem. Most of the proof related to Destin's behavioral issues, the circumstances leading to Mother's restricting Grandparents' visits with Destin, their reactions to the restrictions, and to the nature and effect of the deteriorating relationship between Mother and Grandmother; the testimony of Mother and Grandmother, in particular, conflicted greatly.

In the order granting the petition, the court stated the following with respect to the issue of Mother's opposition to Grandparents' visitation:

3. Respondent/Mother has, effectively, terminated Petitioners' visitation with Destin. The Court finds that Respondent and Petitioner/Step-Grandmother, in particular, have a terrible relationship. Respondent believes Petitioner/Step-Grandmother is trying to 'steal' Destin from her. Petitioner/Step-Grandmother, for her part, sent a particularly ill-conceived and hurtful article

---

[1] As discussed herein the August 16, 2012 order does not contain factual findings establishing Mother's opposition to Grandparents' visitation.

[2] Mother and Jeffrey Redferrin are Grandfather's children.

4

to Respondent, which the Court finds was calculated to hurt respondent's feelings. *See*, Trial Exhibit 6 entitled 'Sociopathic Parenting'.

As noted earlier, when the trial court has set forth its factual findings in the record, we will presume the correctness of those findings unless the evidence preponderates against them. The quoted statement, however, is conclusory, and does not constitute a finding of fact relative to the actions, inactions or behaviors which the court deemed to constitute the termination of Grandparents' visitation; at no place elsewhere in the order are the findings of fact upon which the court bases its determination that Mother "effectively terminated" Grandparents' visitation, as required by Tenn. R. Civ. P. 52.01.[3] Not only is our review hampered by the court's failure to make specific findings of fact, but the briefs of the parties–each in its own way–are deficient in guiding this court to the evidence and other considerations which show that Mother opposed visitation by Grandparents, the threshold finding to invoke the court's intervention in Mother's fundamental right to control with whom Destin interacts.[4] *See Smallwood*, 205 S.W.3d at 361-63.

As we review the record, we first address Grandparents' counsel's reference at the hearing to the order entered August 16, 2012, which was entered on Mother's motion to dismiss for lack of standing. The motion also asserted in support of dismissal that Mother "never denied Petitioner visitation with the child; she has structured it in such a manner which [Mother] believes, after consultation with the child's therapist, to be in the best interest and Petitioner has refused said visitation as offered by respondent." In their response Grandparents stated:

> Mother would like the court to grant her Motion to Dismiss based upon factual arguments that are in dispute. However, that defeats the purpose of a Motion to Dismiss pursuant to Rule 12.03 of the Tenn. Rules of Civ. P. The purpose

---

[3] Tenn. R. Civ. P. 52.01 states:

In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein. Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rules 41.02 and 65.04(6).

[4] For instance, in the discussion of the court's lack of compliance with Tenn. R. Civ. P. 52.01, Grandparents' brief incorporates the discussion from a brief apparently filed in another case, one involving a dispute between parents over parenting time.

of a Motion to Dismiss is to test the legal sufficiency of the complaint, not the strength of the plaintiff's evidence.

In denying the motion, the court stated the following with regard to Mother's assertion:

> In regards to the respondent's Motion to Dismiss, the court finds that pursuant to T.C.A. § 36-6-306, the grandparents do have standing to assert a claim. The court further finds that in her Answer, the Respondent admits that she and the minor child resided with the grandparents for two and a half years, therefore, creating a rebuttable presumption that denial of visitation may result in irreparable harm to the child pursuant to T.C.A. § 36-6-306(a)(5).

There was no holding as to the threshold issue as to whether Mother opposed visitation; the fact that Mother admitted that she and Destin lived with Grandparents does not establish that she opposed visitation.[5] Consequently, to the extent relied upon by Grandparents, the August 16 order does not relieve them of any burden they have as Petitioners.

While the court notes in various parts of its order that Grandfather and Destin maintained a close relationship, there is no proof that Mother opposed Grandfather's visitation with Destin or "effectively terminated" Grandfather's relationship with him; the evidence preponderates against the finding that Mother "effectively terminated" Grandfather's relationship. Similarly, while the court made reference to the conflict between Mother and Grandmother, the court makes no reference or finding as to Mother's testimony that one reason she restricted Grandmother's contact with Destin was because of Mother's belief that Grandmother was not following the behavior modification program instituted by Dr. Webb.

Were we to proceed to consider the application of Tenn. Code Ann. § 36-6-306(a)(5) to the record, the absence of findings of fact would likewise impede our inquiry. The court made no findings, specifically with reference to the effect of Destin's behavior modification program, on whether the denial of visitation with either Grandmother or Grandfather would result in irreparable harm to Destin, as required by § 36-6-306(a)(5), or in its discussion of

---

[5] Such a finding would have been inappropriate in any event as noted by Grandparents in their response, inasmuch as the court was ruling on a motion to dismiss the petition, not on its merits.

6

Destin's best interest.[6] The order does not mention the testimony and recommendation of the Guardian ad litem.[7]

We do not find it appropriate to "soldier on" to conduct an independent review of the record and address the other issues presented by Mother. As noted above, there was no evidence that Mother opposed Grandparents' visitation at the time the court ruled that she had the burden of going forward. The evidence we have reviewed preponderates against a finding that Mother opposed Grandfather's visitation and shows that Mother restricted, but did not oppose, Grandmother's visitation. Moreover, it is necessary for the trial court to make specific findings of fact relative to Mother's opposition to both Grandparents' visitation and to the effect of any denial of visitation on Destin.[8] In addition, the trial court did not assess the credibility of the parties; given the strained relationship between Mother

---

[6] In this regard, the court notes in the order:

> The Court finds that there are facts, which would cause a reasonable person to believe that there is a significant existing relationship between Petitioners and Destin; and that the loss of the relationship is likely to occasion severe emotional harm to Destin.

Again, this is conclusory and not a finding of fact with the contemplation of Tenn. R. Civ. P. 52.01. In addition, we have not been directed to the evidence upon which the court relies in making this statement.

[7] The Guardian testified as well to the conflict between Mother and Grandmother and the justification for Mother's restrictions on Grandparents' visitation with Destin; the Guardian recommended that Grandparents' visitation be at Mother's discretion.

[8] We spoke in *In re Estate of Oakley* to the importance of findings of fact and credibility determinations, particularly as we strive to give the trial court the deference required by Tenn. R. App. P. 13(d) in our review :

> The underlying rationale for this mandate is that it facilitates appellate review by "affording a reviewing court a clear understanding of the basis of a trial court's decision." *Id.* (internal citations omitted). In the absence of written findings of fact and conclusions of law, "this court is left to wonder on what basis the court reached its ultimate decision. . . .While there is no bright-line test by which to assess the sufficiency of the trial court's factual findings, the general rule is that "the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue."

*In re Estate of Oakley*, No. M201400341COAR3CV, 2015 WL 572747, at *10-11 (Tenn. Ct. App. Feb. 10, 2015)(internal citations omitted).

and Grandmother which is apparent in the record, an independent review of the record would be inappropriate in this instance.

## III. CONCLUSION

For the foregoing reasons, we vacate the judgment of the trial court and remand the case for the entry of an order in compliance with Rule 52.01. Pending entry of the trial court's order on remand and subject to such proceedings as may be taking place in the trial court, the order of August 20, 2013 shall remain in effect.[9]

_____
RICHARD H. DINKINS, JUDGE

---

[9] The record before us shows that Mother filed a Motion to Cease Visitation on October 2, 2013, which the court ordered to be set for hearing by agreement of the parties.